UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*****************************************************

| | |
|---|---|
| **CHARLES MENSAH** : | CIVIL ACTION: |
|   Plaintiff : | |
| : | |
| V. : | |
| : | |
| **EGL EAGLE GLOBAL LOGISTICS, LP** : | |
| **and RICHARD SWEET** : | |
|   Defendants. : | FEBRUARY 14, 2006 |

*****************************************************

## COMPLAINT

**I.  JURISDICTION**

1. The plaintiff brings this action against his former employer EGL Eagle Global Logistics, LP pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.; and 42 U.S.C. Section 1981. Jurisdiction is conferred by 28 U.S.C. Section 1331.

2. The plaintiff has exhausted all applicable administrative remedies.

**II.  PARTIES**

3. The plaintiff Charles Mensah resides in Broad Brook, Connecticut. Mensah is filing this complaint to contest the willful discrimination against him on the basis of race and color and for retaliation by his employer, EGL Eagle Global Logistics, LP.

4. The plaintiff is from Africa and is black.

5. The defendant, EGL Eagle Global Logistics, LP (hereinafter "Eagle"), was the plaintiff's former employer. The plaintiff worked out of the defendant's East Granby, Connecticut location. The defendant has over 50 employees.

6. The defendant, Richard Sweet, was the plaintiff's former supervisor for Eagle and was the decision-maker regarding the terms and conditions of the plaintiff's employment and his termination. Sweet is Caucasian.

### III. FACTS

7. In September 2002, Mensah started working for Eagle as a truck driver. Although Eagle classified Mensah as an independent contractor, he actually was an employee of the company, as Eagle exercised control over the performance of Mensah's work, and was in charge of directing him with respect to the means, details, and results of the work assigned.

8. For about a year, Mensah was assigned to a regular driving route which he liked and from which he earned a good income from the defendants. He also was regularly commended by the customers on this route for his service. However, after a new Caucasian truck driver was hired, the defendants removed Mensah from his route and gave it to the Caucasian driver.

9. Mensah complained to his supervisor, Sweet, that his route was taken away and given to the new Caucasian driver. However, his complaint was ignored.

10. A couple of months later, Mensah was assigned to another regular route, which was again taken away from him and given to another new Caucasian driver in about February of 2004.

11. In between these regular routes, and since February 2004, the defendants gave Mensah routes that paid little money and entailed driving long distances to New York and other New England states. This was in keeping with a pattern and practice of assigning the better routes to the Caucasian drivers and the worst routes to the black drivers.

12. With these route assignments, Mensah was denied the opportunity to earn as much money as the Caucasian drivers.

13. The defendants also appear to have a pattern and practice of asking Caucasian drivers first if they wanted a particular route, and if they decline, it is given to Mensah or other black drivers.

14. However, Mensah was never allowed to decline a route, and if he tried to, he would be threatened with termination. This was another form of ongoing racial discrimination by the defendants.

15. After February 2004, Mensah regularly complained about the unfair work assignments. In January 2005, at a meeting with Sweet in attendance, Mensah complained that the Caucasian drivers were allowed to decline routes, while black drivers were not.

16. After that public complaint of race discrimination, the defendants treated Mensah worse than ever. Although he was required to come in to the defendants' facility early in the morning, he was regularly not assigned routes until the afternoon,

3

and that would cause him to be driving into the night. Mensah also was told by Sweet that he would have to start working seven days a week, which meant he wanted Mensah to come into the facility seven days a week and wait for route assignments. This was further discrimination and retaliation, as other drivers were not required to work seven days a week.

17. By March of 2005, Mensah was earning so little money from the defendants and getting so little work that he was constructively discharged. The defendants purposely gave Mensah poor route assignments because of its continuing efforts to discriminate and retaliate against him.

18. As a result of the defendants' race discrimination and retaliation against him, Mensah suffered injuries including lost wages and employee benefits, humiliation, embarrassment and severe emotional distress.

IV. **LEGAL CLAIMS**

**FIRST COUNT (TITLE VII)**

1-18. Paragraphs 1-18 are incorporated herein.

19. The defendant EGL Eagle Global Logistics, LP discriminated against the plaintiff because of his race, and color and retaliated against him for complaining about the discrimination.

**SECOND COUNT (SECTION 1981)**

1-18. Paragraphs 1 through 18 are incorporated herein.

4

19. The defendants EGL Eagle Global Logistics, LP and Richard Sweet denied the plaintiff the same rights to make and enforce contracts and to the full and equal benefit of all laws and proceedings as Caucasians because of his race, and color.

WHEREFORE, the plaintiff seeks:

    A.    Money damages, including compensatory damages, back pay and lost benefits, and emotional distress damages;

    B.    Counsel fees and costs;

    C.    Prejudgment interest;

    D.    Punitive damages;

    E.    Reinstatement or front pay;

    F.    Such other relief as the court may deem just and equitable.

**The plaintiff claims a trial by jury.**

THE PLAINTIFF,

By: *Lynn M. Mahoney*
Attorney Lynn M. Mahoney
Law Offices of Leon M. Rosenblatt
10 North Main Street
West Hartford, CT 06107
(860) 523-8066
Federal Bar No.: ct20996